FORNCROOK *v.* ROOT.[1]

*(Circuit Court, N. D. Ohio.* 1884.)

1. PATENTS—SECTIONAL HONEY-FRAMES.
    Patent No. 243,674, granted to James Forncrook for an improvement in sectional honey-frames, *held* void for want of novelty.
2. SAME—SPECIFIC MECHANISM.
    Whether such patent is for a honey section containing a combination of all the elements specified, so that each element has been made material, *quære;* but *held,* that the patent is not merely for the *blank* adapted for the construction of the honey section by simply bending and uniting the ends, but also embraces the *honey-frame,* as thus formed and made out of such blank.

In Equity.
*Wm. P. Wells,* for complainant.
*J. A. Osborne,* for defendant.

MATTHEWS, Justice. This is a bill in equity to restrain the alleged infringement of letters patent No. 243,674, granted June 28, 1881, to the complainant, James Forncrook, of Watertown, Wisconsin, for a new and useful improvement in sectional honey-frames, and for an account, etc.

The claim of the patent is as follows:

"As a new article of manufacture, a blank for honey-frames formed of a single piece of wood having transverse angular grooves, *c,* longitudinal groove, *d,* and recesses, *b,* all arranged in the manner shown and described."

As set out in the specifications,—

"This invention relates to an improvement in sectional honey-frames, the object being to so construct them that they shall be stronger and in a more portable form than the frames now used for such purposes; and the inven-

1 Reported by J. C. Harper, Esq., of the Cincinnati bar.

tion consists, essentially, in forming the frame from a single blank or piece of material having all the necessary grooves and recesses required to form a complete frame cut in it, the ends of the blank being notched or dentated, and angular grooves cut across it at those points which are to form the corners. These blanks, after being thus prepared, may be packed solidly in boxes or otherwise for transportation, and when required for use are bent into the square form, and their ends united at one of the corners by means of the interlocking notches or teeth, thus forming a complete frame, ready for use."

It is further stated that—

"The blanks for these frames are preferably formed from some light, tasteless, and comparatively tough wood, which will bend at the corners without steaming or boiling, such as basswood or whitewood; the material being produced by cutting it from the log in the form of a thick veneer, or by sawing into thin stuff and then planing both surfaces. The blanks are then cut from this material, of the proper width and length, and the ends dentated, as shown at *a, a,* by means of a series of circular saws placed close together upon an arbor or other suitable tool, so that they will interlock when brought together. The recesses, *b, b,* are then formed in its edges at such points in its length as will bring them at the top and bottom of the frames when set up in the hive. These recesses form openings, which allow space for the passage of the bees between the frames, and for the ventilation of this part of the hive. Three triangular grooves, *c, c, c,* are then cut across the blank at such points in its length as will divide it into four nearly equal parts, each of which forms one side of the frame after the blank is bent into a quadrangular shape. These triangular grooves are cut nearly through the blank, sufficient wood only being left to hold the parts firmly together. As the sides of the grooves, *c,* are inclined towards each other at a right angle, it follows that, when the blank is bent into the form of a frame, these grooves make perfectly fitting miter-joints at three of its corners, the fourth corner being that at which the ends of the blank are united to each other by means of the interlocking teeth formed thereon. In one of the spaces between two of the grooves, *c,* and preferably that which will form the top of the frame when placed in the hive, is formed a longitudinal groove, *d,* for the guide-strip, which makes a secure point of attachment for the comb when the bees begin to build in the frames set side by side in the hive with the parts of the frame containing the recesses, *b, b,* at top."

"These frames," it is added, "meet a want long felt by bee-keepers, as those in common use are either dovetailed or nailed together at the corners; and if set up at the manufactory, form a large bulk for transportation, and are very liable to breakage in handling; but if sold to the user in pieces to be put together by him, the numerous joints to be made cause loss of time, and produce a very fragile article when finished, which loses its rectangular shape with the slightest rough usage, as the joints at the corners lack the necessary strength and rigidity to hold them in shape."

"My frame," the specification continues, "will be found to possess none of the above-named defects, as it is intended for transportation in solid packages before being set up, and when set up possesses great strength and rigidity, preserving its form without difficulty during all the rough handling to which such frames are frequently subjected."

The defendant denies infringement, and alleges want of patentable novelty in the alleged invention.

It is admitted that the defendant manufactures and sells blanks for honey-frames like those of the complainant, in all respects but one. They omit the longitudinal groove for the guide-strip, for attaching a piece of comb as a beginning point for the work of the bees. It is claimed by the defendant that this omission is sufficient to distinguish his manufacture from that described in the patent, as it is contended that the patent is for a honey section containing a combination of all the elements specified in the patent, so that each element, by force of the patent, has been made material to the alleged invention described and secured thereby. It is insisted, however, on the other hand, that this is a misconception of the invention patented, and that "the patent," to use the language of counsel, is for "the construction of a blank completely adapted to form a honey section ready for immediate use by simply bending it into shape and joining its ends;" that is, the patent is not for a honey section with all the features enumerated, considered as a combination, but for the blank adapted for its construction by simply bending and uniting the ends. Conceding this to be the true meaning of the claim, it is necessary, to support the patent, to consider it as embracing the honey-frame as thus formed and made out of such a blank; for supposing the frame or section not to be covered by the patent, would leave, as included in and covered by it, merely the idea of leaving the blank in its condition as such, for the purpose of more convenient packing and transportation, to be formed by bending together and uniting its ends, by the purchaser for use, into a honey-frame. The embodiment of that single idea can hardly be supposed to be the proper subject of a patent. It is merely the adoption of a form for handling and packing, which is not regarded by the statute as an improvement in an art or manufacture. If the patentee is entitled to claim the blank as a new and useful device, it is because it is a constituent of the frame or section into which it is formed by bending, no matter who bends it, whether the maker or the purchaser for use. And if the state of the art, at the date of the alleged invention, was such that the patentee cannot claim as his invention the honey frame or section when formed by bending and uniting the ends of such a frame, then he cannot, for the same reason, claim as his invention such a blank for the purpose of forming it into a frame or a section.

The question, therefore, is whether, upon the evidence at the date of the alleged invention, the manufacturer of honey frames or sections, by bending and uniting the ends of a blank consisting of a single piece, substantially as described in this patent, was a patentable novelty. Upon a careful comparison, and consideration of all the evidence, this question must be answered in the negative. Alexander Fiddes testifies to making and using honey sections formed from a single piece, grooved, bent, and united at the ends, as early as 1872

and 1873, some of which he sold to others for use; and if those now made by the complainant, under his patent, are superior in any respect to those first specimens of the manufacture, it is merely in point of finish and workmanship. There is no difference whatever in principle, and the early examples were complete and practical frames, actually used, and perfectly serving the purpose, so that they cannot be considered as rude and imperfect experiments, subsequently developed into a successful manufacture.

This conclusion, indeed, is required by the production in evidence of the patent granted to Hutchins, of December 8, 1874, No. 157,473, which is for a machine for the manufacture of just such blanks from the original log of wood, to be bent into form, and the ends united, so as to make the sides of a box for any purpose. The invention of such a machine, of course, supposes knowledge of the blanks it was designed to manufacture; and the transfer of the use of a box made from such a blank, from the ordinary purposes to the simple and special purpose of a box or frame for a honey section, is merely a new use of an old and well-known article, which involves no invention.

It results from these views that the equity of the case is with the defendant, and that the complainant's bill must be dismissed, with costs; and it is so ordered.